Thank you, Your Honor. Rob McMillan on behalf of the plaintiffs slash appellants, also present as Angelina Sampson, one of the plaintiffs as well. I'd like to reserve three minutes, please. Alright. In reviewing the record, the pleadings, the briefing, three factual issues kind of jumped out at me as being almost glossed over. The first one is the significance of these bonuses. Ms. Sampson, for example, had she met the bonus expectation or had it been paid, would have been entitled to almost 100% of her salary. And the reason I mention that is we're not dealing with minor, you know, gratuitous type bonuses. These are significant. Some of the upper-level management folks could earn $100,000 if they met the expectations contained within these memos. The other issue that gets kind of glossed over is the reality that the plaintiffs performed. They performed 100% of their expectation. It was after they had performed in January of 2009 when the employer decided that it was not going to pay the bonuses for 2008. Finally, the other issue that gets glossed over, for lack of a better term, is that the case law that talks about bonuses in general focuses on the existence of the offer for the bonus at the same time the employer reserves the right to not pay it. And this isn't the case in this circumstance. We have two different documents. They're contemporaneous, roughly, the employment agreement itself and the 2006 memorandum where they generate this new bonus structure. So, counsel, in your view, what was the offer in this case? The offer is contained within the 2006 memorandum that says if you meet these metrics, we're changing the system, first of all. We're going to do away with discretion. We're going to do away with these promises that we've kind of dallied about before. And we're going to give... So it's an amendment to the employment contract. You know, good question. Whether it's an amendment or a modification or a subsequent agreement, I don't know that it matters. Well, it can't be a subsequent agreement, can it? I mean, it can't stand entirely by itself. It doesn't define anything else that would be needed in an employment contract. It speaks only about bonus, not about term, what you're working on, anything else. Well, I think that's what's important in this circumstance is that that memorandum defines the bonus expectation for both the employer and the employee. My question is you're suggesting that it could be a stand-alone contract by itself. I don't understand that. If that were all that existed, if there's no employment contract, the bonus wouldn't have much of a foundation to stand on because bonus is all it talks about. And the employee's got more than a bonus. Well, and I think the bonus memorandum can stand independent of the employment agreement itself. It's a separate contract. Perhaps it modifies the employment agreement or the policy that's 214. But the reality is that the plaintiff's performed. So to the extent there's other expectations that are contained outside of that agreement, I don't know that they're germane to the payment of the bonus itself. Well, didn't the employees perform under the original employment contract? Well, they're certainly performing under the terms of that contract as well. I would agree with that. I hear you say. I mean, I understand the case that they've done what they were supposed to do, but I don't know that the 2006 memo changes that. They did what they were supposed to do before. The problem they have is that the employment contract before appears to give the board ultimate discretion, even if it turns out to be after the work is performed because a bonus is set up that way. And so now I try to figure out, well, is the 2006 agreement something separate? Is it an amendment that removes the board's discretion? I mean, what is it? I have trouble understanding it as something separate because I really don't see how it can stand by itself. It only talks about the bonus system, and it doesn't purport to be an independent employment agreement or an ovation or a complete replacement of the original employment agreement. So for me, the issue is what effect does it have on the original employment agreement? I don't know that it modifies the terms of the original employment agreement any, but it does. Well, if it doesn't with regard to the board's discretion, isn't that a problem for your argument? No, because I believe if you read that 2006 memo closely, it's very particular. You will be entitled to a bonus if these metrics are met. Well, it also says with few exceptions. Right. And that modifies the amount of the bonus. That qualifies the amount of the bonus. If you read that memo as a whole in a manner consistent with the dissent in Storty, for example, where we're talking about the policy at the University of Washington, the agreement to the extent it's read as a whole, that, with certain limited exceptions language, modifies the amount of the bonus. It doesn't modify the existence of the bonus. No, it modifies the qualifying profitability levels. Indeed, the amount of the bonus. How can, if that's a stand-alone contract, how can we say that the terms are certain if there is specific incorporation of exceptions without those exceptions being defined? I don't know that those exceptions are either identified or defined. The exception relates to the amount of the bonus to the extent they meet profitability metrics per plant. So, again, there's a difference between the- But what are the exceptions? I don't know. That's the problem I'm having is that how can you have a contract if the terms aren't certain? If it says with few exceptions and the exceptions are not cabined in any way, defined in any way, or described in any way, how can that be a contract? Well, I would ask how can that be a legitimate exception to the promise that is in that memo that says you will be paid a bonus in the event you meet these metrics. But all of the terms in a contract have to be certain. Indeed. And if you're looking at that phrase independent of the entire memorandum, you're not getting the entire contract. You're getting only a portion of it. And in my opinion, it's a- But the entire contract has to be certain. And I believe the 2006 memo contains an abundant amount of certainty. You will get these bonuses in the event your plant meets these profitability expectations. With exceptions, though. But, again, I believe if you read that memo as a whole, in a manner consistent with the dissent in Storti, who talks about the policy at UW, needs to be read as a whole. You can't independently pick and choose bits and phrases from the contract and generate a reserved discretionary bonus. Counsel, if you're relying on that language as only modifying the amount of bonus that you think the employees were going to be entitled to with certainty, I think that does circle back to Judge Clifton's first question and maybe our panel's questions, which is are you treating the 2006 agreement as a standard agreement or as a modification of the employment contract? It's hard for me to imagine that it's not a modification because I don't see all the terms that would need to be in there otherwise. Well, it certainly doesn't- So just so you know where I'm going, forgive me for interrupting, but I don't know how you divorce yourself from the equivocal language in the employment contract if this is a modification. Well, whether you view it as a modification or an amendment or a standalone contract, the reality is that it contains sufficient detail to identify what the bonuses may be independent of the employment agreement. Look at the employment agreement and how broad it is. It covers a number of different things. Here's the deal. If the 2006 agreement is a memo, is an amendment, you can't look at it separately from the employment agreement. It's all one bowl of soup. I disagree with that. And in my opinion, because this 2006 memorandum is exclusively addressed to the concept of bonus payment and structure, we have an independent agreement relating to bonuses that's maybe in addition to the terms and conditions that are contained in the employment agreement, but we have a separate document that identifies the circumstance in which these employees are going to be paid bonuses. So you think that's your position, that it allows you to read out the language that makes very clear. In the employment agreement, I think you would agree. It's very clear that the board has discretion. Indeed, and I would also go so far as to say that to the extent the employees perform in a manner consistent with that 2006 memorandum, we no longer have a conversation about what the offer is, what consideration is. We're beyond that now because the employees have performed in a manner consistent with it over the course of an entire year. Just so I understand your argument, if we disagree with you regarding whether or not the memo, 2006 memo, is a modification of the employment agreement, if in our view it is an intended modification of the employment agreement with all of its terms, do you lose? I don't think so. Why not? Because the agreement is independent and it outlines a term. But I ask you to assume that we see this, and I'm speaking only for myself because we haven't discussed this case, but assume that we see this as all one agreement, including the employment agreement, with this provision of discretion for the employer. Do you lose? If you read that phrase, with certain limited exceptions, to apply to the... No, no, no. If we read the employment agreement with its provision that the employer retains discretion as to whether or not to give bonuses, together with the 2006 memo, if we read those all as one contract, do you lose? I don't believe so. Because the plaintiffs, the appellants, performed. Performance takes us completely out of the... Is it your argument that performance takes away the discretion? It doesn't take the discretion. If we're looking at the policy that is the employer reserves discretion to not pay bonuses, then no. But we're not looking at a policy that says that. We're looking at an agreement, the 2006 memorandum... That sort of begs the question, because we're trying to figure out if that part of the original contract survived. And you really haven't given me an explanation as to why it changed. I mean, there's nothing in the 2006 memo that says that's one of the changes we're making. They list lots of changes. More money to salary instead of bonus and so forth. They don't talk anything at all about companies giving up its discretion. So to tell me that the employees have already performed, I'm not sure I understand how that's an explanation for why the company's given up the discretion. They were performing before. They say the bonus program worked. We want to make some refinements. They never talk about giving up discretion as one of the refinements. So why should we infer that's what the plan did? Again, let's focus our attention on STORTY. That's the case that says substantial performance, partial and substantial performance, relieves the... is consideration. It gets the employee where they need to be in terms of earning their bonus. Are you telling us that the employees wouldn't have worked as hard but for this 2006 plan? I can't say that. I mean, I don't know that any... Because they were good employees before and they're good employees after. Correct. That's sort of the problem. It's not like they've made a trade for something. It's not like the company's given up discretion in exchange for harder working employees. So I'm still adrift as to how it is we should infer the company's given up the discretion that the original agreement explicitly gave it. I think because of the terms of the memo are very explicit and extremely unequivocal. You will be entitled to a bonus. You will earn a bonus if. It's very, very specific and unequivocal. I'll reserve the balance of my time. All right. Thank you, counsel. We'll hear from Jeldwin. Good morning. May it please the court, my name is Sheehan Sullivan-Weiss from the law firm of Davis Wright Tremaine and I'm representing the appellee, Jeldwin, in this matter. Respondent Jeldwin is asking the court to affirm the district court's dismissal of appellate's claims on summary judgment because the 2006 memo did not modify the discretion that the board of directors retained in order to determine whether bonuses would be paid out in the first place. Counsel, what was, in your view, what was the 2006 memo? Was it a modification to the employment agreement? Was it a standalone agreement? How do you characterize it? Well, your honor, we don't take the position that it's a standalone agreement and we have trouble seeing how it can modify the original employment contracts because it does have illusory elements to it, including the language that you identified earlier that calls out exceptions. But what is it? If it's not a standalone and not a modification, what is it? It's a set of guidelines, much like many other guidelines that companies issue that have parameters for managers to review and to follow and to consider in making decisions. But it had pretty definitive language, you will receive a bonus. It's pretty definitive. I understand that, your honor. And I think that the, what I will say is that, you know, what the district court determined is that this 2006 memo was actually a modification to the employment agreements. And counsel, in his opening brief. But you don't agree with that. Well, I don't think that it has the elements to modify the 2006 employment agreements, but whether it does or doesn't, it still doesn't change the discretionary nature, even if it modifies the employment agreement. Because the employment agreement on all four corners plainly states that the board retains discretion to determine whether it will authorize bonuses. And that memo comes into play, if at all, after the board has already determined whether it will issue bonuses in a particular calendar year for work done the previous year. But the memo was issued very shortly after the time these folks signed their employment contracts, right? It was really contemporaneous. I mean, the employment agreements, and to clarify that issue, Geldwin had all of its managers sign employment agreements. So these employment agreements were issued to all of the managers at that point in time. And at the same time, the 2006 memo was also issued. And so I agree that there is, that the 2006 memo and the employment agreements were contemporaneously reviewed and considered by the plaintiffs. And so I think that that further goes to support the position of Geldwin, which is that the employment agreements, which are plainly state that the board retains discretion to authorize bonuses in the first place, that the 2006 memo then helps to define and provide parameters and understanding for folks about how individual plant profitability may impact those bonuses if they're authorized. Well, those words like may and if they're authorized don't appear in the 2006 memo, do they? You're right, Your Honor. The 2006 memo does not refer back to the employment agreements, and it doesn't expressly state that it retains the discretion that's set forth in the employment agreements. The wind you're facing here is that the workers did the work, and there's been no suggestion that their failure to work caused the company's distress at a time when the housing industry in particular is being turned upside down. So, you know, fair or not, there is some sense of, gee, here's what you're going to get. The 2006 memo speaks in pretty firm terms. It feels like a bait and switch. Work hard, we're going to pay you these bonuses unless we're not. But it doesn't say unless we're not. So why aren't the workers supposed to say, well, heck, I'm going to get out there and work really hard because look at these great bonuses that are coming my direction. Well, two points to that, Your Honor. I think that Geldwin, you know, had every hope that there wouldn't be a global recession and had every intention on, you know, treating employees well and helping to support them financially and all of the rest of that. But it also, at the same time, when this agreement and this 2006 memo were issued at the same time, retained the discretion to decide whether to pay bonuses in the first place, as is its right to do. And that gets to be our question. I mean, there's no question that if the 2006 memo repeated the language that was contained in the employment contract, we probably wouldn't be here. Conversely, if the original employment contract didn't have that language, we probably wouldn't be here because the company doesn't assert that it could cut salaries. So our problem now is trying to figure out if the language that gave the board discretion that was contained in the original employment contract survived into the 2006 agreement amendment, however we characterize it. And why should we say that it did? Well, Your Honor, when the employees signed the employment agreements, they read on the very first page this paragraph that plainly retains the discretionary nature of the bonus. It states that various different factors will be considered on determining how bonuses will be paid, if any. And some of those factors that were identified are the individual plant performance as well as the company's overall financial performance. And so when they're looking as well at the 2006 memo, which doesn't have the indicia of contract, which doesn't have them signing or authorizing or any of the sort of traditional elements of a contract, they can't be pulled apart. And the harmonious reading that the district court resolved and which we asked the Ninth Circuit here to affirm is that the 2006 memo, I'm sorry, the employment agreements retained the ultimate discretion of the board to authorize the bonus program. But then at that point in time, the 2006 memo provides the structure and how it will be distributed, because, of course, this is a company with thousands of employees. How it will be distributed if it's going to be distributed. If it's going to be distributed, correct. And so a company with thousands of employees must necessarily have guidelines and structures and standards for how they would distribute discretionary bonuses if authorized by the board. I think to Judge Clifton's point, you can read it that way, but it doesn't say that. The 2006 memo does not say that. Putting them together, that's the hard part. The intersection is tough. And then the fact that they were considered simultaneously by the employees can be read two ways as well. I think your interpretation is certainly plausible, but it's not without, there's certainly a lot of wiggle room there. And, Your Honor, I would offer that if this memo, the 2006 memo, was issued, you know, two years down the road that wasn't contemporaneous with the employment agreements, this would be a different case. This would be a harder case, I think, for Geldwin to be able to argue and prevail on, because they're not linked at that point in time. And I think it would be more difficult to stand here before the court. But certainly at the point ñ The fact that they are close is a useful fact for your purposes. But it's not a brand-new bonus program. Indeed, the bonus program apparently existed for a long time. And the 2006 memo explains some changes in it. Now, those changes don't say anything about removing the board's discretion, but they do place greater emphasis on the performance of an individual plant. And it could be inferred from that less significance on the performance of the company as a whole. So why can't somebody read this and say, well, the deal here is we're looking small, we're looking local. If your plant succeeds, you're going to get a bonus. If your plant doesn't do very well, the fact the rest of the company does great, that may be too bad for you. That focus moves away from the board's discretion with regard to the overall financial condition of the company and more toward let's see how this plant performed. Why shouldn't this be taken by the employees as an agreement to focus on what happens within the four corners of my factory? Well, I think the bonus program does place more emphasis on what happens between the four corners of my factory or my plant. But the employment agreement plainly states that the company's overall profitability is a consideration, as it should be in a discretionary bonus plan. Because in the company of Geldwin, there are many different plants, small plants, large plants across the country. And of course the overall company performance would be a primary driver as to determine whether a discretionary bonus would be issued or not. This is providing a framework for how to distribute bonuses if they're authorized in a manner that recognizes individual plant performance. Your Honor, I also wanted to just address the issue that plaintiff has raised that somehow this is a standalone contract and I'm not sure that this is an issue that we need to spend much time on. But appellant's opening brief plainly states that the position in their argument is that the 2006 memo was a modification of the employment agreement. So it takes us by surprise that they're taking the position that it's a standalone agreement here. I read the briefing as that being a point where you agreed. But it sounds like actually you're now saying that you're not so sure that it was a modification. I certainly agree that the blue brief left me with that impression that that was not a contested point. I think that the 2006 memo and the employment agreements, because they're so contemporaneous, can be viewed together. And the question is what does the 2006 memo do to modify, if at all, the employment agreement? Counsel, do you think it's a modification or not? You've really left me wondering now. What is your position on that, please? Well, Your Honor, we're asking the court to affirm the lower court's decision. And so to the extent that the court thinks that this is a modification, we don't dispute that because the importance from our perspective is that it doesn't modify the discretionary nature of the bonus program to begin with. I understand that part of your argument. Thank you. You've answered my question. Okay. Thank you, Your Honor. Thank you. Are there any other questions from the panel? If you're willing to take whatever route leads to the right result. Well, I mean, ultimately I think... I practice law. I understand. All lawyers take yes for an answer, by the way. So that wasn't a diss. I understand your position. Thank you. No, I appreciate that. Thank you very much. Are there any other questions from the panel? It appears not. Thank you, Counsel. Thank you, Your Honor. Rebuttal. Counsel, my question is how did the plant do? I can't speak to the specifics, but I'm confident that the plants both in question earned a bonus. They had a profitability metric that qualified them for a bonus. I don't know the exact number, though. Two follow-up points that I just really want to focus the court's attention on is, again, whether we identify this 2006 memorandum as a modification or an independent contract, I don't know that that's terribly germane to the conversation. You'll take either route to a victory as well. Indeed I will. But the reality is that the client, the appellants, the plaintiffs performed. And imagine yourself in the circumstance where a 2006 bonus memorandum comes around that fundamentally changes the way you're paid. You perform in a manner consistent with the memorandum in 2006 and get bonused in 2007. You perform in a manner consistent with the memorandum in 2007 and get paid in 2008. I really do share your concern, but the reality is that at that time a lot of people performed and performed well and lost their jobs because their companies failed. And the housing industry in particular was hard hit. Well, if they had contracts that guaranteed the payment for a given period of time, the contracts should and presumably would be honored. But you still have to turn to what the agreement between the parties was. And I hear you, and I believe the workers worked hard, but we're still left with a question of whether the term in the original employment agreement survived or was excised by the 2006 memo. And the fact that they worked and performed, I really don't understand how that answers that question. It answers the question, and you can't amend it after the fact, but that presumes the answer to begin with, which is that there's no longer discretion. Why do we say there's no longer discretion? Because of the very unequivocal language of the 2006 memo. Is it contingent upon the performance of the plants? Well, the amount of the bonus is certainly contingent upon the performance of the plant. To the extent they don't generate a profit, they're not entitled to a bonus. Well, if the plant—oh, not entitled to any bonus. It depends on the profitability level, if I'm not mistaken. That's my question, counsel. Do you think that the ability of your clients to claim entitlement to the bonus was contingent upon the plants performing profitably? I believe it is, yes. If the plant is not profitable— And it's in the record, so I don't need to debate that point. That is, your argument depends upon that. Correct. Okay. So to bring all of this full circle, if you look at these two documents that are contemporaneous, indeed, the 2006 and then the employment agreements that are signed at the same time, Gelblin had the capacity, as indicated by the very explicit reservation of discretion in the employment agreement, they had the capacity to make this 2006 memo subject to that agreement. They had the ability. They knew that discretion was an issue, and retaining that discretion was important. And yet they make specific promises. You will be entitled to a bonus in the event you meet these metrics. Perhaps because they thought the discretion was retained in the employment agreement and the memo didn't change that. You know, I would expect that to be a little bit more explicit in the 2006 memorandum. It is their document, so we can strew it against the drafter. Indeed. And that tagline on page 3 that says, with certain limited exceptions, cannot be reasonably read to essentially disqualify all the specific promises that are contained in the balance of the memorandum. Perhaps. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Clifton, Christen